2023 IL App (1st) 211367-U

Order filed: February 2, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1367

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN MCMAHAN, LYNN MCMAHAN and TRINITY GREEN, LLC-509 PEYTON, an Illinois Limited Liability Company, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2021 L 002684 |
| SOL HOLLAND COMPANY, INC., an Illinois Corporation and CHUBB NATIONAL INSURANCE COMPANY, | ) ) ) ) ) | Honorable Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1 *Held*: We reversed the order dismissing plaintiffs' complaint on limitations grounds and remanded for further proceedings, as there was a question of fact regarding whether defendants were equitably estopped from asserting the statute of limitations as a defense to plaintiffs' cause of action.

¶ 2 Plaintiffs, John McMahan (John), Lynn McMahan, and their limited liability company,

Trinity Green, LLC-509 Peyton, filed a five-count complaint against defendants, Sol Holland

Company Inc. (Holland), and Chubb National Insurance Company (Chubb). Counts I and II alleged breach of contract and negligent misrepresentation against Holland. Counts III through V against Chubb alleged breach of contract, indemnification, and improper claims practice under sections 154.6 and 155 of the Illinois Insurance Code (215 ILCS 5/154.6, 5/155 (West 2020)) and section 919.50(a) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code § 919.50(a) (2004)). All five counts pertained to Holland's failure to procure an insurance policy from Chubb covering water damage to property owned by plaintiffs in Geneva, Illinois. The circuit court dismissed all five counts based on plaintiffs' failure to file the complaint within the applicable two-year statute of limitations set forth in section 13-214.4 of the Code of Civil Procedure (Code) (735 ILCS 5/13-214.4 (West 2020)). Plaintiffs appeal. We reverse and remand.

¶ 3    The pertinent facts are undisputed.

¶ 4    Plaintiffs are the owners of property located at 509 Peyton in Geneva (the Geneva property). Holland is a professional insurance firm that places insurance coverage with several carriers, including Chubb. Brian Schott is the president of Holland and runs its daily operations.

¶ 5    Chubb has issued numerous insurance policies to plaintiffs dating back to 1992, providing both individual and business coverages. A problem arose with plaintiffs' former Chubb insurance agent in 2018. Due to that agent's mismanagement of plaintiffs' accounts and insurance coverages, the premiums on certain Chubb insurance policies were not properly debited and paid, causing the policies to be cancelled. Upon discovering the problem, plaintiffs terminated their former insurance agent and retained Holland to obtain new policies from Chubb. Holland subsequently procured homeowners' policies for plaintiffs with Chubb for two of their homes, as well as an automobile policy and an excess liability policy.

¶ 6    Plaintiffs thereafter requested that Holland procure coverage with Chubb for the Geneva property. On November 28, 2018, Schott sent an email to John stating that he had received approval from his underwriter to issue the insurance policy with Chubb for the Geneva property and he asked whether John wanted him to "proceed with binding the coverage effective immediately." John replied, "Yes." Schott then sent John a second email on November 28, 2018, stating "The policy will be issued."

¶ 7    On December 4, 2018, Chubb advised Schott that the requested policy was denied. Schott did not immediately inform plaintiffs that coverage had been declined for the Geneva property.

¶ 8    On January 29, 2019, a pipe burst at the Geneva property causing water damage in excess of $150,000. Plaintiffs notified Schott of the loss that same day. Schott indicated that the loss might not be covered. John then contacted Chubb directly and demanded coverage. Chubb assigned a claim number to the matter.

¶ 9    On February 1, 2019, Schott sent John an email listing plaintiffs' various houses and automobiles insured by Chubb; the Geneva property was not one of the covered properties. Schott recommended that John obtain insurance for the Geneva property with another company "while Chubb is sorting through things since no coverage is in place at this time." Schott further stated that "Chubb is looking into the matter" and that he would follow up with plaintiffs when he heard more information from Chubb.

¶ 10    On February 3, 2019, John sent Schott an email referencing a phone conversation in which Schott allegedly stated that he and/or Holland would pay for the water damage to the Geneva property caused by the burst pipe. Schott responded with an email later that day stating that the matter was "under review with Chubb" and that he would "go over next steps once Chubb makes

their final determination." On February 4, 2019, John emailed Schott asking for a written commitment to pay the claim from his own funds if necessary.

¶ 11    On February 9, 2019, Schott's attorney, Beth Herrington, sent an email to John informing him that coverage on the Geneva property had lapsed prior to the burst pipe but that "Schott is working with Chubb to determine what (if anything) Chubb is willing to cover." She requested that John send Schott estimates for repair work performed on the Geneva property so that he could submit them to Chubb, and she stated that "Schott will contact you immediately once Chubb provides him any feedback on potential coverage."

¶ 12    On February 9, 2019, John sent an email to Herrington stating that Schott had "promised that he would be personally responsible for the damages even if Chubb refused to pay" and that "now it seems he has broken his word and hired an attorney. It's a disgrace that he could make promises and then break them so easily. We have attorneys too."

¶ 13    On February 12, 2019, Herrington emailed John and informed him that Schott was a small business owner who had not agreed to personally cover their loss, but that he would "work diligently with Chubb, to see what Chubb will do on coverage for losses on the Geneva property." Herrington further encouraged John to send her estimates of their losses so that she can submit the estimates to Chubb and "hopefully, get this coverage matter behind you." John sent an email to Herrington telling her that Schott had never informed them of any problem with Chubb's coverage and that she was "dealing with a liar on many levels."

¶ 14    On March 2, 2019, Herrington sent an email to John, thanking him for sending her the estimates and informing him that she would ensure that Schott submitted them to Chubb. John sent Herrington an email that same day stating,

"Please ask your client if he indeed promised to pay the claim from his own 'reserve fund' and claim it under his malpractice policy (errors of omission). If he denies this he is not being truthful. We have several witnesses to these conversations and his emails imply that if Chubb declined the claim he would discuss 'next steps' referring to his numerous promises to pay himself and claim it on his malpractice policy. Please confirm that he will be honoring his promises."

¶ 15   Chubb ultimately completed its investigation and denied plaintiffs' claim in a declination letter dated March 4, 2019. Chubb stated therein that it was unable to provide coverage for the water damage resulting from the burst pipe in the Geneva property because "no policy was in force at the time of the loss." Plaintiffs received the letter on March 11, 2019.

¶ 16   On March 8, 2021, plaintiffs filed their five-count complaint against defendants. Count I alleged that Holland breached its contract with plaintiffs to provide a homeowners' policy through Chubb for their Geneva property. Count II alleged that Holland negligently misrepresented that it procured the homeowners' policy with Chubb. Count III alleged that Chubb, through its agent Holland, breached its contract with plaintiffs to provide a homeowners' policy for the Geneva property. Count IV alleged that Chubb should be obligated to indemnify plaintiffs for the damages resulting from the burst pipe in the Geneva property. Count V alleged that Chubb's failure to provide the homeowner's policy violated sections 154.6 and 155 of the Illinois Insurance Code (215 ILCS 5/154.6 and 5/155 (West 2020)) and section 919.50(a) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code § 919.50(a) (2004)).

¶ 17   On April 29, 2021, Holland filed a section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2020)) motion to dismiss counts I and II of the complaint against it because those claims were untimely under section 13-214.4 of the Code. Section 13-214.4 states:

"All causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2020).

¶ 18    Holland argued that it is an Illinois insurance producer and that under section 13-214.4, plaintiffs had two years from the date their causes of action accrued to bring their claims for breach of contract and negligent misrepresentation premised on Holland's failure to procure the homeowners' policy for the Geneva property. Holland argued that plaintiffs' causes of action accrued sometime between November 28, 2018, the date when plaintiffs directed Holland to procure the homeowners' policy with Chubb, and December 4, 2018, when Chubb declined coverage.

¶ 19    Holland acknowledged that under the discovery rule, the start of the limitations period is tolled until the claimant knows or reasonably should have known of the injury and that the injury was wrongfully caused. Holland argued that plaintiffs were on notice of their injury on February 1, 2019, when Schott explicitly informed them in an email that the damage from the burst pipe was not covered. Plaintiffs did not file their complaint until more than two years later on March 8, 2021, and therefore Holland argued that it is time-barred under section 13-214.4.

¶ 20    On July 7, 2021, Chubb filed a combined motion to dismiss counts III, IV, and V against it pursuant to sections 2-615 and 2-619(a)(5) of the Code (735 ILCS 5/2-615 and 5/2-619(a)(5) (West 2020)). With respect to the section 2-615 motion, Chubb argued that all of plaintiffs' claims in counts III, IV, and V are premised on allegations that Holland was Chubb's agent. Chubb contended that plaintiffs had failed to plead facts sufficient to establish an agency relationship

between Holland and Chubb and therefore that plaintiffs' claims against Chubb should be dismissed for failure to state a cause of action. With respect to the section 2-619 motion, Chubb made the same argument as Holland that plaintiffs' complaint was untimely under section 13-214.4.

¶ 21　On July 20, 2021, the circuit court granted Holland's section 2-619(a)(5) motion to dismiss counts I and II of the complaint with prejudice, finding that plaintiffs were on inquiry notice of their claims against Holland by February 1, 2019, and that their complaint was untimely under section 13-214.4 as it was filed more than two years' later.

¶ 22　On September 13, 2021, the circuit court granted Chubb's section 2-619(a)(5) motion to dismiss counts III, IV, and V with prejudice for the same reason, finding that the complaint was untimely under section 13-214.4. The court stated that it "does not reach the alternate grounds for dismissal" under section 2-615.

¶ 23　Meanwhile, on August 5, 2021, plaintiffs filed a motion to reconsider the order dismissing counts I and II against Holland. Plaintiffs argued that after Schott told them that he had failed to procure a homeowners' policy from Chubb covering the Geneva property, they had contacted Chubb, who issued them a claim number and commenced an investigation as to any potential coverage. Plaintiffs contended that the issuance of the Chubb claim number and the concomitant investigation into their claim lulled them into a false sense of security that there would be coverage and indemnification and, as such, that Holland should be equitably estopped from raising the statute of limitations as a defense.

¶ 24　In addition, plaintiffs argued that Holland should be equitably estopped from raising the statute of limitations because plaintiffs submitted a claim with Holland's errors and omissions (E & O) insurance carrier, Utica National Insurance (Utica), which remains open and unresolved.

Plaintiffs attached a series of emails showing that the claim was being investigated by Utica. Plaintiffs argued that it would be patently unfair for the court to find that the statute of limitations had run on their claim against Holland when an active and unresolved investigation was being conducted by its E & O carrier.

¶ 25    Alternatively, plaintiffs argued that Chubb and Utica have actively misled them into believing that their claims would be considered despite any limitations period, which caused them to ignore any filing deadlines. Accordingly, plaintiffs contended that the statute of limitations should be equitably tolled during the time-period of the insurers' investigations.

¶ 26    On October 12, 2021, the circuit court entered an order denying plaintiffs' motion to reconsider the dismissal of counts I and II of their complaint against Holland. The order stated that "[i]n light of the Court's prior orders dismissing Plaintiffs' claims with prejudice, this is a final order disposing of the case." Plaintiffs filed a timely appeal.

¶ 27    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts that certain defects, defenses, or other affirmative matters outside the pleadings defeat the claims. *Austin Highlands Development Co. v. Midwest Insurance Agency, Inc.*, 2020 IL App (1st) 191125, ¶ 10. Specifically, under subsection (a)(5), dismissal is appropriate when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). When analyzing such a motion, the court accepts all well-pleaded facts in the complaint as true, as well as any reasonable inferences from those facts, and construes all pleadings and supporting documents in the light most favorable to the nonmoving party. *Austin Highlands*, 2020 IL App (1st) 191125, ¶ 10. The critical issue on appeal is "'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal

is proper as a matter of law.'" *Id.* (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)). Review is *de novo. Id.*

¶ 28    As discussed earlier in this order, the statute of limitations for an action against an insurance producer for the failure to procure an insurance policy is two years from the date the cause of action accrues. 735 ILCS 5/13-214.4 (West 2020). Anyone who is required to be licensed to sell, solicit, or negotiate insurance, including both agents and brokers, are considered insurance producers subject to the two-year limitations period. *Austin Highlands*, 2020 IL App (1st) 191125, ¶ 14. In the instant case, all the parties on appeal agree that defendants Holland and Chubb are insurance producers and that all five counts of plaintiffs' complaint concern their allegedly negligent failure to procure the homeowner's policy for the Geneva property. Accordingly, under section 13-214.4, plaintiffs' causes of action against each defendant must be brought within two years of the accrual date. The issue on appeal is when plaintiffs' causes of action against defendants accrued.

¶ 29    A recent Illinois Supreme Court case, *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, is informative. In *Krop*, the homeowners (the Krops) asked an agent of American Family Mutual Insurance Company (American Family) to procure for them a homeowners' insurance policy equal to the coverage under their old policy with a different company. *Id.* ¶ 4. Pursuant to their request, American Family issued an insurance policy on March 21, 2012, which the Krops renewed each of the next three years. *Id.*

¶ 30    In 2014, the Krops were sued for defamation, invasion of privacy, and intentional infliction of emotional distress. *Id.* ¶ 5. On August 20, 2014, American Family denied coverage and thereafter filed a declaratory judgment action, seeking a declaration that the policy did not provide coverage for these torts. *Id.* ¶¶ 5-7.

¶ 31　In September 2015, the Krops filed a counterclaim against American Family and a third-party claim against the agent who procured the policy. *Id.* ¶ 8. They alleged that the agent negligently failed to provide them with an insurance policy equal to their old policy, which would have covered the claims for defamation, invasion of privacy, and intentional infliction of emotional distress. *Id.* Both American Family and the agent moved to dismiss the Krops' claims against them based on the two-year statute of limitations set forth in section 13-214.4. *Id.* ¶ 9. The trial court granted the motions to dismiss. *Id.* ¶ 10.

¶ 32　On appeal to the supreme court, the pertinent issue was when the two-year statute of limitations began to run. In answering that question, the supreme court explained that the negligent failure to procure insurance is a tort arising out of a contract and, as such, the cause of action accrues on the date of the contractual breach, not the date when the party sustains damages. *Id.* ¶ 35. Neither party disputed that the breach occurred when the agent delivered the allegedly nonconforming policy. *Id.*

¶ 33　The supreme court then addressed the application of the discovery rule, which delays the start of the limitations period until the claimant knows or reasonably should have known of the injury and that it was wrongfully caused. *Id.* ¶ 21. The supreme court held that insurance customers are injured as soon as the insurance producer procures a policy that does not conform to the customers' request. *Id.* ¶ 35. The Krops' alleged injuries included not only their uninsured liability in the underlying lawsuit against them but also their lack of coverage between the purchase of the policy in 2012 and the lawsuit in 2014. *Id.* The Krops should have known of their injuries on the date the policy was issued, March 21, 2012, because they had a duty to read the policy and discover any defects. *Id.* ¶¶ 36-38. Thus, the two-year limitations period began on March 21, 2012, and

ended on March 21, 2014. *Id.* ¶ 38. Because the Krops brought their claims after March 21, 2014, they were untimely. *Id.*

¶ 34　The instant case also involves a claim of negligent failure to procure insurance, which is a tort arising out of a contract, and therefore plaintiffs' causes of action based on that claim accrued on the date of the breach. *Id.* ¶ 35. Unlike *Krop*, where the date of the breach was easily calculated as occurring on the day that the nonconforming policy was issued to the Krops, no homeowners' policy for the Geneva property ever was issued. Thus, the breach here was in Schott's failure on November 28, 2018, to comply with his contractual obligation (as evidenced by the exchange of emails between John and Schott on that date) to procure a homeowners' policy for the Geneva property from Chubb "effective immediately." Plaintiffs' injuries included not only the lack of coverage on the date that the pipe burst, January 29, 2019, but also the lack of coverage between November 28, 2018, and January 29, 2019.

¶ 35　Under the discovery rule, plaintiffs should have known of their injuries on January 29, 2019, when Schott informed them in a telephone call of a possible coverage issue, prompting them to call Chubb. To the extent that there is a question as to what Schott specifically told plaintiffs on January 29, 2019, plaintiffs still should have known of their injuries no later than February 1, 2019, when Schott sent John an email listing the properties owned by John that were insured by Chubb, none of which included the Geneva property. Schott further informed John in the February 1 email that he should procure insurance for the Geneva property with another company because "no coverage is in place at this time." Ordinarily, then, the two-year limitations period set forth in section 13-214.4 would begin to run no later than February 1, 2019, ending on February 1, 2021, rendering plaintiffs' complaint filed on March 8, 2021, as untimely.

¶ 36    However, plaintiffs argue that defendants should be equitably estopped from employing the limitations defense. Equitable estoppel prevents defendants from asserting the statute of limitations as a defense when plaintiffs reasonably relied on defendants' words or conduct in delaying their complaint and plaintiffs suffered injury as a result. *Swan & Weiskopf, Ltd. v. Meed Associates, Inc.*, 304 Ill. App. 3d 970, 977 (1999). Defendants' words or conduct need not be intentionally deceptive, fraudulent or misleading. *Id.* Instead, "this court must rely on less legal, more equitable concepts of 'conscience and duty of honest dealing' in determining if the defendant's words or conduct should deny it the right to assert a limitations period defense." *Id.*

¶ 37    Cases where an insurer's conduct was found to have amounted to an estoppel typically involve a concession of liability by the insurer, advance payments by the insurer to plaintiff in contemplation of eventual settlement, and statements by the insurer encouraging plaintiff to delay filing his action. *Sweis v. Founders Insurance Co.*, 2017 IL App (1st) 163157, ¶ 52. However, the mere pendency of negotiations conducted in good faith, in the absence of any such concession of liability, advance payments in contemplation of settlement, or statements encouraging the insured to delay filing suit, is insufficient to give rise to estoppel. *Id.*

¶ 38    Defendants argue here that they made no concessions of liability or advance payments to plaintiffs in contemplation of settlement that would amount to an estoppel of their right to assert the two-year statute of limitations. Defendants further contend that they made no statements encouraging plaintiffs to delay filing suit; rather, defendants argue that the February 1, 2019, email in which Schott admitted to John that "no coverage is in place at this time" for the Geneva property effectively notified plaintiffs that they should consider litigation, thereby triggering the two-year limitations period.

¶ 39    However, plaintiffs argue that Schott also stated in the February 1, 2019, email that Chubb was "looking into the matter" and that he would contact plaintiffs when he "hear[s] more information from Chubb," which encouraged plaintiffs to delay filing suit.

¶ 40    Plaintiffs further contend that the February 1, 2019, email "should not be considered in a vacuum" as there was a course of conduct between plaintiffs and Chubb and several other email exchanges between John, Schott and Herrington that arguably worked an estoppel against defendants' limitations defense. Specifically, after being informed by Schott on January 29, 2019, that Chubb might not cover the water damage to the Geneva property, plaintiffs contacted Chubb directly, demanding coverage, and Chubb responded by assigning them a claim number and commencing an investigation into the facts of the case and any potential coverage. On February 3 and February 4, 2019, John emailed Schott referencing his understanding that Schott had committed to personally paying for their losses in the event that Chubb denied coverage. Schott responded with an email stating that the coverage issue was "under review with Chubb" and that he "will go over next steps once Chubb makes their final determination."

¶ 41    In a February 9, 2019, email, Schott's attorney, Herrington, informed John that Schott had not agreed to personally cover their loss, but that "Schott is working with Chubb to determine what (if anything) Chubb is willing to cover." John sent Herrington an email that day informing her of Schott's promise to personally pay their damages in the event that Chubb denied coverage. In a February 12, 2019, email, Herrington asked John to send her estimates of the losses to the Geneva property so that Schott "can advance the process," and "get the estimates submitted to Chubb ***        and hopefully, get this coverage matter behind you." John sent the estimates to Herrington and informed her in an email sent on March 2, 2019, of Schott's stated commitment to pay for their damages from his own reserve fund if Chubb's investigation resulted in the denial of coverage.

¶ 42    Thus, the evidence shows that Chubb undertook a formal investigation of plaintiffs' claim in February 2019, and in that same month, Schott and Herrington repeatedly informed plaintiffs that the claim was open and unresolved, that a "final determination" had yet to be issued pending receipt of the estimates and the completion of the investigation, and that Herrington was "hopeful" of a favorable determination. During this time-period, plaintiffs also claim that Schott gave oral assurances that he would personally reimburse them for their losses if Chubb's investigation resulted in the final denial of coverage, and that he gave implicit assurances in writing, as evidenced by the reference in his February 3 email to discussing "next steps" with them.

¶ 43    A question of fact exists as to whether all these communications in February and March 2019 caused plaintiffs to believe that either Chubb or Holland/Schott might cover the water damage in the Geneva property once Chubb completed its investigation, lulling plaintiffs into delaying suit until receipt of the declination letter on March 11, 2019 (thereby giving them two years until March 11, 2021, to file their cause of action).

¶ 44    Because plaintiffs' estoppel argument presented a question of fact as to whether plaintiffs' complaint filed on March 8, 2021, was timely, the court erred by disposing of the issue as a matter of law and granting the dismissal motion on limitations grounds. See *e.g.*, *Lombard Co. v. Chicago Housing Authority*, 221 Ill. App. 3d 730, 736-37 (1991) (reversing the trial court's section 2-619 dismissal on limitations grounds and remanding because there was a question of fact regarding whether defendant was equitably estopped from asserting the statute of limitations).

¶ 45    Defendants argue that plaintiffs forfeited review of the equitable estoppel issue by raising it for the first time in the motion to reconsider the dismissal order and by failing to include in the appellate record a transcript of the hearing on the motion to reconsider. See *American Chartered Bank v. USMDS, Inc.*, 2013 IL App (3d) 120397, ¶ 13 ("Issues cannot be raised for the first time

-14-

in the trial court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal."); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (the appellant has the burden to provide a complete record and "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding."). Review of the record indicates, though, that plaintiffs did not wait to raise the issue of equitable estoppel for the first time in the motion to reconsider, but rather raised the elements thereof earlier, in their response to Holland's motion to dismiss. Specifically, in its response to the dismissal motion, plaintiffs specifically drew the court's attention to Chubb's issuance of a claim number and to the February email exchange between Schott and John, all of which lulled plaintiffs into thinking that the coverage issue remained open and unresolved and contributed to their decision to delay filing suit. As such, the equitable estoppel issue was timely raised in front of the circuit court prior to the motion to reconsider. The record on appeal (containing all of the relevant email communications) is sufficient for us to address the issue.

¶ 46     Defendants also argue that plaintiffs improperly submitted new evidence (emails between Holland's E & O insurance carrier and John) in support of its motion to reconsider the dismissal orders, without any explanation as to why that evidence was not submitted earlier when the court was first considering the dismissal motions. Defendants cite *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989), which held that submission of new material in a motion for reconsideration should not be allowed absent a reasonable explanation for why it was not available at the time of the original hearing. We need not address whether plaintiffs' submission of the new evidence in support of their motion to reconsider was improper, as our order reversing the dismissal orders is not based in any way on the new evidence.

¶ 47    For all the foregoing reasons, we reverse the dismissal orders and remand for further proceedings.

¶ 48    Reversed and remanded.